J-S22031-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :           PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| JENNIFER CORTIS | : |
| | : |
| Appellant | :  No. 3110 EDA 2025 |

Appeal from the Judgment of Sentence Entered July 28, 2025
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0004727-2024

BEFORE:  PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:         **FILED AUGUST 11, 2026**

Appellant, Jennifer Cortis, appeals from the judgment of sentence imposed after a jury convicted her of terroristic threats and simple assault. On appeal, Appellant challenges the restitution portion of her sentence. After review, we affirm on the basis of the trial court's well-reasoned opinion.

By way of background, the trial court explained:

On April 17, 2025, a jury trial was held where the following facts were established. On the morning of August 3, 2024, Christine Haycock (the victim), and her contractor went to her property in Pottstown, Pennsylvania that Ms. Haycock had been renting out to Appellant so that they could, among other things, check out an issue with the hardwood floor in the home. [N.T. Trial, 4/18/25, at 22-24]. When Ms. Haycock and her contractor approached the front door of the property, Ms. Haycock noticed there was damage to the front door and siding, the window on the top half of the door had been covered, and the glass was missing. *Id.* at 24-25.

After knocking on the door and waiting to hear a response three times, Ms. Haycock struggled to unlock the door to enter the home while Appellant worked to keep the door locked. *Id.* at 25-26. Subsequent to struggling to unlock the door and enter the house,

Ms. Haycock pulled down the plastic that was covering the top half of the door and saw Appellant on the other side trying to put the plastic back up. *Id.* at 28-30. Then, Appellant started yelling to someone "Go get my gun." *Id.* at 30. After Appellant yelled this three times, Ms. Haycock said: "You're going to start brandishing a gun?" *Id.* To this, Appellant replied that she would shoot Ms. Haycock, and as Ms. Haycock reached to pull down more plastic from the door, Appellant reached through the door and shoved Ms. Haycock. *Id.* at 30-31. As a result, Ms. Haycock stumbled backwards and fell off the front porch (about 18 inches in height) onto the concrete below. *Id.* at 31.

Ms. Haycock sustained various injuries. *Id.* at 32. After this incident, Ms. Haycock went to the police station, where photos were taken of Ms. Haycock's injuries. *Id.* at 32-33. After going to the police station, Ms. Haycock went to an urgent care facility, where she was told to go to the emergency room. *Id.* at 35. Ms. Haycock went to Grand View emergency room where she received treatment for her injuries. *Id.* at 38-39.

At the conclusion of the trial, the jury found Appellant guilty of terroristic threats and simple assault. [*Id.* at] 118-119. On July 28, 2025, a sentencing hearing was held, where the Commonwealth presented the witness testimony of Ms. Haycock and presented, as exhibits C-1, C-2, and C-3, the three invoices (together totaling $20,517.08) billed to Ms. Haycock as a result of Appellant's crimes. During the sentencing hearing, Ms. Haycock testified that when she went to the police station on August 3, 2024, (after she had been injured) the police station called an ambulance for Ms. Haycock, which she declined. N.T. [Sentencing Hearing, 7/28/25, at 5]. She also testified that the other two bills were related to Appellant's crimes. *Id.* Additionally, the Commonwealth informed the court during the sentencing hearing that the defense and the Commonwealth stipulated to the authenticity of the three bills. *Id.* at 4.

On cross-examination, when asked if she had homeowners' insurance for the rental property on August 3, 2024, Ms. Haycock testified that she believed she did. *Id.* at 6. She also testified on cross-examination that she did not have Medicare or Medicaid insurance on August 3, 2024, and that she had not negotiated any payment of the bills admitted as exhibits, though she had inquired about whether one of the bills would be reduced because she did not have insurance. *Id.* at 7. Appellant was sentenced to 18 months' probation for each count, to run concurrently, to pay

costs and restitution, and to comply with the rules, regulations, and special conditions of supervision. **Id.** at 14.

Trial Court Opinion, 1/21/25, at 1-3 (some formatting altered).

Appellant filed a post-sentence motion challenging the amount of restitution, which the trial court denied. Thereafter, Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's claim.

On appeal, Appellant raises the following issue for review:

Did the [trial] court err in ordering restitution in the amount of $20,517.08 when [Ms. Haycock's] testimony at trial made no mention of refusing an ambulance and the Commonwealth failed to eliminate the possibility that some of [Ms. Haycock's] bills may have been covered by homeowner's insurance or could have been negotiated to a lower amount?

Appellant's Brief at 3.

Appellant notes that at sentencing, the Commonwealth presented evidence of three medical bills incurred by Ms. Haycock along with testimony "regarding how each bill was incurred." **Id.** at 11. However, Appellant asserts that (1) Ms. Haycock did not testify that she refused an ambulance, and instead stated that she went to urgent care before being referred to an emergency room; (2) the Commonwealth failed to present any evidence indicating that the medical bills were not covered by homeowners' insurance; and (3) there was no "testimony from Good Will Steam Fire Engine Company or Grandview Hospital that the bills could not be negotiated to a lesser amount." **Id.** at 11-12. Appellant concludes that "these inconsistencies and omissions left nothing more than speculation as to the actual value of the

restitution owed" and argues that the "restitution order must be reversed and this matter remanded for a new sentencing hearing regarding the amount of restitution." *Id.* at 12.

Appellant's claim implicates the discretionary aspects of her sentence. *See Commonwealth v. Weir*, 239 A.3d 25, 38 (Pa. 2020) (explaining that a challenge to the amount of restitution generally goes to the discretionary aspects of sentencing); *see also Commonwealth v. Biauce*, 162 A.3d 1133, 1138 (Pa. Super. 2017) (stating that "[a]n order of restitution is a sentence, thus, the amount awarded is within the sound discretion of the trial court and must be supported by the record") (citation omitted).

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa. Super. 2016) (citations omitted). Before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted).

Here, the record reflects that Appellant preserved this issue by raising it in her post-sentence motion, filing a timely notice of appeal and a court-

ordered Rule 1925(b) statement, and including a Rule 2119(f) statement in her brief. *See Corley*, 31 A.3d at 296. Further, Appellant's claim raises a substantial question for our review. *Commonwealth v. Solomon*, 247 A.3d 1163, 1167 (Pa. Super. 2021) (*en banc*) (reiterating that an "[a]ppellant's challenge to the amount of restitution set by the trial court presents a substantial question") (citation omitted). Therefore, we have jurisdiction to review Appellant's claim.

Following our review of the record, the parties' briefs, and relevant legal authority, we discern no abuse of discretion by the trial court.[1,2] *See Biauce*, 162 A.3d at 1138. The trial court accurately detailed the relevant facts of this case with citations to the record, included legal authority applicable to Appellant's restitution claim, and properly concluded that Appellant was not

---

[1] We note that the trial court ordered Appellant to pay restitution as a part of her sentence, not as a condition of probation. Therefore, the trial court was not required to conduct an ability-to-pay hearing before imposing Appellant's restitution sentence. *See* 18 Pa.C.S. § 1106(c)(1)(i) (stating that the court shall order restitution "[r]egardless of the current financial resources of the defendant").

[2] Further, to the extent Appellant challenges the quality of the evidence presented by the Commonwealth at sentencing, we will not re-weigh the trial court's credibility determinations on appeal. *See Commonwealth v. Felder*, 176 A.3d 331, 334 (Pa. Super. 2017) (reiterating that "the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence") (citation omitted).

entitled to relief.  **See** TCO at 1-9.  Therefore, we affirm on the basis of the trial court's opinion.[3]

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 8/11/2026

_____

[3] The parties are directed to attach a copy of the trial court's opinion in the event of further proceedings.